IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1985-WJM

MICHAEL JOSEPH ELFERT,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

This matter is before the Court on review of Defendant Commissioner of the Social Security Administration Andrew M. Saul's (the "Commissioner's") decision denying Plaintiff Michael J. Elfert's applications for disability insurance benefits and supplemental security income. Plaintiff filed his opening brief on October 19, 2019 (ECF No. 17), the Commissioner filed his Response on November 26, 2019 (ECF No. 20), and Plaintiff filed his Reply on December 11, 2019 (ECF No. 21). For the reasons set forth below, the Commissioner's decision is affirmed.

**I. BACKGROUND**

Plaintiff applied for disability insurance benefits and supplemental security income on February 9, 2017, alleging a disability onset date of January 15, 2015. (R. at 15.) Plaintiff was born in September 1970 and was 44 years old at the alleged onset date. (R. at 67.) Plaintiff's applications were initially denied on July 6, 2017, and thereafter, he requested a hearing in front of an administrative law judge ("ALJ"). (R. at

15.)  That hearing took place on July 30, 2018.  (*Id*.)

## II.  THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated November 13, 2018.  (R. at 34.)  At step one of the sequential evaluation process required by law,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. at 20.)  At step two, the ALJ found that Plaintiff has the following severe impairments: psoriatic arthritis, gout, osteoarthritis of the bilateral hips status post total right hip replacement, degenerative disc disease of the lumbar spine, right shoulder labral tear, depressive disorder, generalized anxiety disorder, and alcohol abuse disorder.  (R. at 20.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. at 21.)

As to Plaintiff's residual-functional capacity ("RFC"), the ALJ found that

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: occasionally climb ramps and stairs; never climb ladders ropes or scaffolds; occasional stooping, kneeling, crouching, and crawling; occasional reaching overhead with the dominant right upper extremity; frequently handling and fingering; and no exposure to extreme cold, vibration or hazards such as unprotected heights and dangerous machinery.  The claimant is able to understand, remember,

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1998).  The claimant has the burden of proof through steps one to four; the Commissioner has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

>    and carryout tasks that do not involve significant complexity
>    or judgment, and that can be learned in up to six months'
>    time on the job.

(R. at 23.)

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (R. at 32.) At step five, taking into account Plaintiff's age (48 at the time of the ALJ's decision), education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national and regional economies which Plaintiff can perform. (R. at 33.) Based on the hearing testimony from a vocational expert, the ALJ determined that Plaintiff could perform such jobs as cashier, routing clerk, and sales attendant. (*Id.*) Consequently, the ALJ found that Plaintiff to be "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (R. at 34.)

### III.  LEGAL STANDARD

The Court's review of a determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been

met." *Grogan*, 399 F.3d at 1262.  However, the Court "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  Additionally, "[t]here are specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).  "Failure to follow these rules constitutes reversible error." *Id*.

## IV.  ANALYSIS

Plaintiff contends that the ALJ erred by: (1) failing to give credence to Plaintiff's statements as to the severity, persistence, and limiting effects of his pain; (2) giving significant weight to the medical opinion of state agency medical expert Dr. Jeffrey Merrill; (3) giving limited weight to the medical opinion of Dr. Lia McGibbon; and (4) concluding that Plaintiff could frequently handle and finger.  The Court concludes that none of these arguments have merit, and the decision of the Commissioner denying Plaintiff's applications will accordingly be affirmed.

### A.    Plaintiff's Statements Regarding His Symptoms

Plaintiff contends that the ALJ did not properly evaluate Plaintiff's statements as to the severity, persistence, and limiting effects of his pain, and that the reasons supplied by the ALJ for discounting those statements are not supported by substantial evidence.  (ECF No. 17.)  The Court disagrees.

At the hearing in front of the ALJ, Plaintiff testified that severe symptoms related to his psoriatic arthritis caused him to quit his job as an electrician sometime in 2014 or 2015.  (R. at 44–46.)  Plaintiff testified that his joints had become so damaged that his "boss would have to send [Plaintiff] to the emergency room so [he] could be put on an

4

IV with steroids to take the swelling out of [his] wrists and [ ] knees." (R. at 46.) Plaintiff further stated that he can only sit or stand for up to an hour at a time, he cannot bend at the waist, he "would be lucky" to be able to lift a gallon of milk with two hands, and that it is difficult for him to handle and grasp objects. (R. at 24.)

With respect to Plaintiff's statements regarding his symptoms, the ALJ found

> that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 24.)

The ALJ proceeded to analyze the administrative record in detail and explain why she determined Plaintiff's RFC to be less restrictive than Plaintiff believes that it is. (R. at 24–32.)

As an initial matter, the ALJ was entitled to give less than full credence to Plaintiff's statements regarding the severity of his symptoms on the basis that those statements were inconsistent with other evidence in the record. *See* SSR 16-3P, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). And as to whether there is substantial evidence supporting the ALJ's finding that Plaintiff is not as functionally restricted as he claims to be, the Court concludes that there is.

As the ALJ explained, the administrative record reflects that since at least 2015,

5

Plaintiff has seen specialists for his psoriatic arthritis and related pain. (R. at 24–32.) Treatment records reflect that Plaintiff would commonly present with only minor (if any) limitations in strength and range of motion. (*See, e.g.*, R. at 692–93.) Indeed, Plaintiff on numerous occasions reported to doctors that he had walked several (up to five) miles to his appointment. (R. at 676, 696, 1843.) And often, Plaintiff's doctors would note that he had not been taking his pain medication. (*See, e.g.*, R. at 785, 1581.)

The record also reflects that Plaintiff frequently visited the emergency room, where he commonly would complain of falling down and aggravating his arthritic pain. (*See, e.g.*, R. at 1327.) However, emergency room staff often noted that their examination findings and Plaintiff's ability to move around with apparent ease were inconsistent with the severe pain in his joints that he reported. (*See, e.g.*, R. at 726.) At these emergency room visits, Plaintiff often was intoxicated and seeking narcotics. (*See, e.g.*, R. at 1175, 1707.)

Moreover, both the consultative examiner Dr. Timothy Moser and state agency medical consultant Dr. Jeffrey Merrill opined that Plaintiff was capable of a limited range of light work. (R. at 30–31.) The ALJ gave significant weight to both of these opinions in whole or in part, explaining that they are consistent with records from Plaintiff's physical examinations which frequently revealed non-severe functional limitations, and with Plaintiff's own reports of walking several miles every day. (*Id.*)

Plaintiff points out that one of his examining physicians, Dr. Lia McGibbon, opined that Plaintiff can only stand or walk less than two hours in an eight-hour workday, and that he is limited to handling and fingering for only 50% of an eight-hour workday, among other things. (R. at 2008–11.) Plaintiff also notes that, according to

6

Dr. Moser, Plaintiff can only finger or handle "occasionally," in contrast with the ALJ's finding that Plaintiff could do so "frequently."  (R. at 690–94.)  But while these opinions may detract from the ALJ's findings as to the severity of Plaintiff's symptoms, they certainly do not "overwhelm" the contrary evidence to such an extent that the ALJ's findings are not supported by substantial evidence.  See Musgrave, 966 F.2d at 1374.

Based on the above, a reasonable factfinder could have concluded that Plaintiff's statements as to the severity of his symptoms are inconsistent with other evidence in the medical record.  The ALJ accordingly did not err in making this finding.

**B.    Points of Error (2)–(4)**

Plaintiff's points of contention (2)–(4) are partly interrelated.  First, Plaintiff argues that it was error to give Dr. Merrill's opinion more weight than that of Dr. McGibbon, because Dr. McGibbon physically examined Plaintiff and Dr. Merrill did not.  Social Security regulations provide that "[g]enerally, [the Commissioner] give[s] more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."  20 C.F.R. § 404.1527(c)(1).

It is true that all else being equal, the opinion of an examining medical source should be given more weight than that of a non-examining medical source.  See id.  However, nothing in the regulations require an examining source's opinion to *necessarily* be given more weight than a non-examining source's opinion.  See id.  Here, the ALJ gave Dr. McGibbon's opinion limited weight because she found that it was not supported by other medical evidence (R. at 32), and the ALJ was entitled to do so.  See 20 C.F.R. § 404.1527(c)(3) & (4).

Plaintiff further suggests that the ALJ erred in giving significant weight to Dr.

7

Merrill's opinion because certain exhibits in the administrative record were unavailable to Dr. Merrill at the time he rendered his opinion. Again, however, there is no authority for the proposition that this is necessarily error. Plaintiff does not attempt to explain what *in particular* about the subsequent developments in the medical record would mandate affording less weight to Dr. Merrill's opinion. Indeed, it is clear that in determining Dr. Merrill's opinion to be consistent with other evidence in the record, the ALJ considered evidence that came to light after Dr. Merrill rendered his opinion. (*See* R. at 30.)

Finally, Plaintiff points out that there is evidence in the record which would support a finding that his handling and fingering capabilities are more impaired than the ALJ found it to be. (ECF No. 17.) But even assuming this to be true, an ALJ's factual determinations must stand if they are supported by substantial evidence, and for the reasons set forth above, the Court concludes that they are. *See Hamilton*, 961 F.2d at 1497–98.

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's decision denying Plaintiff's application for disability insurance benefits and supplemental security income is AFFIRMED.

Dated this 22nd day of July, 2020.

BY THE COURT:

William J. Martinez
United States District Judge